**FILED**
January 19, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____lad_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| STEPHANIE CARTER,<br><br>*Plaintiff*,<br><br>v.<br><br>DENIS RICHARD MCDONOUGH, *et al.*,<br><br>*Defendants*. | Civil No.: 6:22-cv-01275-ADA |

**BRIEF FOR FORMER SECRETARY ROBERT WILKIE AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION AND INTEREST OF *AMICUS CURIAE***

In the wake of the Supreme Court's 2022 *Dobbs* decision regarding abortion, the Secretary of the U.S. Department of Veterans Affairs issued an Interim Final Rule ("IFR") mandating that facilities in that Department would henceforth provide abortion services. Plaintiff Stephanie Carter sued under the Religious Freedom Restoration Act ("RFRA"), and the Constitution's Free Exercise Clause, for violating her religious liberties.

Those are not the only legal infirmities. The regulation also violates the notice-and-comment requirements of the Administrative Procedure Act ("APA"). Those requirements can be set aside only for good cause under narrow circumstances. But the Secretary's rationale in the IFR does not satisfy the high standard that an agency must meet for the narrow exceptions to notice-and-comment, both under controlling precedent and the views of various other circuit courts.

Although Plaintiff has not yet asserted a claim under the APA, the fact that the IFR is so clearly unlawful under the APA reinforces the conclusion that this Court should grant the preliminary injunction Plaintiff requests.

The lawfulness of the IFR is of particular interest to *Amicus Curiae* Robert Wilkie, who served as the Secretary of the U.S. Department of Veterans Affairs from 2018 to 2021. Secretary Wilkie is only the tenth person to have the honor of leading that Department, and he is the immediate predecessor to the current Secretary. As such, Secretary Wilkie is deeply committed to seeing the Department he recently led act in accordance with the law and remain true to its vital mission of caring for those who have worn the uniform and sacrificed to protect the Nation. Secretary Wilkie is now a Distinguished Fellow for the Center for American Security at the America First Policy Institute ("AFPI"). AFPI is dedicated to advancing policies that will result in a better and brighter future for Americans—in other words, it advances policies that put

2

American citizens first. As part of his mandate at AFPI, Secretary Wilkie works to develop public policies that enhance the national security of the United States while also caring for those who put their lives on the line to provide that security.

## ARGUMENT

Plaintiff Stephanie Carter challenges a recent Interim Final Rule ("IFR") issued by Secretary Denis McDonough of the U.S. Department of Veterans Affairs ("VA") requiring VA personnel to provide abortion services. *See* Reproductive Health Services, 87 Fed. Reg. 55287 (Sept. 9, 2022). While Plaintiff is correct that this IFR violates the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb-4, and the Free Exercise Clause of the First Amendment to the U.S. Constitution, U.S. Const. amend. I, those are not the only laws this IFR violates. For the following reasons, this IFR is also unlawful under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA").

This IFR suffers from multiple infirmities under the APA. When an agency action violates the APA, courts hold the action unlawful and set it aside. 5 U.S.C. § 706(2). Accordingly, a court should vacate agency actions that exceed the agency's statutory grant of authority. *Id.* § 706(2)(C). The same goes for agency actions that are contrary to law. *Id.* § 706(2)(A). Those requirements sound the death knell for this IFR.

Indeed, this IFR marks a significant departure from VA policy as codified both in statute and in regulations. For example, under the APA's requirements that a rule not exceed statutory authority or be contrary to law, here the Secretary's statutory authority expressly excludes elective abortions. *See* Veterans Health Care Act of 1992, Pub. L. No. 102-585, § 106, 106 Stat. 4943, 4947 (codified at 38 U.S.C. § 1710 note) ("In furnishing hospital care and medical services … the Secretary of Veterans Affairs may … not include[e] under this section … abortions … except for

3

such care relating to a pregnancy that is complicated ...."). The VA's understanding of this statute is reflected in its longstanding regulatory policy. The relevant rule reflecting this understanding is found in the Civilian Health and Medical Program of the Department of Veterans Affairs, 63 Fed. Reg. 48100, 48100–01, 48105 (Sept. 9, 1998) (to be codified at 38 C.F.R. pt. 17) ("CHAMPVA"). Until September 2022, CHAMPVA disallowed providing abortions unless the mother's life was in danger. *Id.* at 48101, 48105.

But then the Supreme Court held that the Constitution does not confer a right to abortion in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2284 (2022), overruling *Roe v. Wade*, 410 U.S. 113 (1973), and its progeny. President Biden swiftly responded with an Executive Order seeking to ensure the Federal Government would provide abortion services. Exec. Order 14076, 87 Fed. Reg. 42053 (July 8, 2022). The following month, President Biden sought to broaden those federal efforts. *See* Exec. Order 14079, 87 Fed. Reg. 49505 (Aug. 3, 2022). Evidently, that was insufficient for the Biden Administration as these Executive Orders became a starting gun for agency actions not directly mandated by those presidential actions.

This is one such agency action. Issued on September 9, 2022, the VA's IFR claimed that allowing public comment before the regulation goes into effect would be "impracticable and contrary to the public interest." 87 Fed. Reg. at 55295. The Secretary also refused to delay the effective date until after giving the notice to the public and receiving comments from interested citizens and stakeholders. *Id.* at 55296. This Court should not allow that refusal to stand.

Federal law does not permit the VA to forego notice and comment here. The APA sets forth the general requirements Congress mandates for promulgating federal agency rules. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015). This includes the general requirement of public notice, 5 U.S.C. § 553(b), followed by a period of

accepting comments from the public, *id.* § 553(c).  Notice-and-comment may be dispensed with only when the government shows "good cause" that this process would be "impractical, unnecessary, or contrary to the public interest."  *Id.* § 553(b)(B).  Relatedly, a regulation can take effect immediately only when certain exceptions apply.  *Id.* § 553(d).  Those provisions are not satisfied here.

This is especially true for APA § 553(b)(B).  "The APA's notice and comment exemptions must be narrowly construed."  *Professionals & Patients for Customized Care v. Shalala*, 56 F.3d 592, 595 (5th Cir. 1995) (internal quotation marks omitted).  A narrow construction of that exception safeguards the interests that providing public notice and allowing public comment protect.  *See Dep't of Lab. v. Kast Metals Corp.*, 744 F.2d 1145, 1153 n.17 (5th Cir. 1984).  As a consequence, the "various exceptions" to these requirements must be "only reluctantly countenanced."  *N.J. Dep't of Env't Prot. v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980).

Given that the VA has not provided general abortion services in the decades encompassed in the regulatory framework of the *status quo ante*, the Secretary's underdeveloped assertions that access to abortion is important do not "show strong enough reason to invoke the § 553(b)(B) exception."  *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 214 (5th Cir. 1979).  In other words, "[a] mere recitation that good cause exists . . . does not amount to good cause."  *Zhang v. Slattery*, 55 F.3d 732, 746 (2d Cir. 1995), *superseded on other grounds by statute*, 8 U.S.C. § 1101(a)(42).  "Bald assertions" of having good cause are insufficient to constitute good cause.  *Action on Smoking and Health v. C.A.B.*, 713 F.2d 795, 800 (D.C. Cir. 1983) (per curiam).  The Secretary's assertions are little more than that—conclusions masquerading as findings of fact.

Instead, the notice-and-comment exception can be invoked only where the agency shows that the government faces an urgent situation that can brook no delay.  In one example, the Fifth

Circuit explained that Section 553(b)(B) "is an important safety valve to be used where delay would do real harm." *U.S. Steel Corp.*, 595 F.2d at 214. Another example illustrates that this standard is typically met only in emergencies. When recently examining a two-month delay between deciding whether Covid-19 constituted a workplace emergency and the Occupational Safety and Health Administration's ("OSHA") issuing a Covid-19 vaccine mandate for large employers, the Fifth Circuit found the time lag problematic regarding bypassing notice-and-comment by declaring the situation an emergency, *see BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 612 & n.14 (5th Cir. 2021), reasoning that "[o]ne could query how an 'emergency' could prompt such a 'deliberate' response," *id.*, at 611 n.11. So, too, *Dobbs* was handed down on June 24, 2022, but the Secretary issued this IFR on September 9 of the same year—more than two months later. If two months was indicative of a non-emergency for the OSHA vaccine mandate, so should the greater interval of time here indicate a non-emergency for the VA.

At the very least, the Fifth Circuit has "made clear that the test is one of impracticality—which means analysis in practical terms of the particular statutory-agency setting and the reasons why agency action could not await notice and comment." *Am. Transfer & Storage Co. v. I.C.C.*, 719 F.2d 1283, 1295 (5th Cir. 1983). With its extensive caselaw adjudicating APA issues, the D.C. Circuit provides a blueprint for applying this principle—one that confirms that the Fifth Circuit's precedent should be understood as authorizing Section 553(b)(B)'s bypass only in "emergency situations where delay would do real harm." *Action on Smoking*, 713 F.2d at 800. This Court has followed that rule from the D.C. Circuit, quoting and relying upon that very case. *See Tex. Food Indus. Ass'n v. U.S. Dep't of Agric.*, 842 F. Supp. 254, 259 (W.D. Tex. 1993). Waiting for notice-and-comment is thus impractical in situations that can be characterized as emergencies.

In issuing this IFR, Secretary McDonough has not made a showing that the current situation is anything resembling an emergency. He declares that leaving veterans "without access to abortions and abortion counseling puts their lives at risk." 87 Fed. Reg. at 55295. But that is a straw man. First, it does not explain how the VA functioned for decades without realizing that its failure to provide abortions left veterans struggling in the midst of what the Secretary now suggests must be an emergency. While the VA could argue that *Roe* made it unnecessary for the VA to provide abortions, that argument does not establish an emergency situation to save the life of the mother because Texas's new law does not prohibit abortion when the mother's life is at risk. Tex. Health & Safety Code § 170A.002(a)–(b). In fact, contrary to what one would extrapolate from the IFR, life-saving exceptions are the norm for abortion laws. *See* Hannah Bleau, *States Banning Abortions Have Exceptions for Saving the Life of the Mother*, Breitbart (June 27, 2022), https://www.breitbart.com/politics/2022/06/27/states-banning-abortions-have-exceptions-for-saving-the-life-of-the-mother/ (listing as examples Arkansas, Idaho, Kentucky, Louisiana, Missouri, Oklahoma, South Dakota, and Texas). Even those staunchly opposed to these laws concede as much. *See, e.g.*, Caren Myers Morrison, *State Abortion Bans: Pregnancy as a New Form of Coverture*, 108 Va. L. Rev. Online 381, 387 (2022) (noting "all of the bans allow an exception for abortions necessary to save the life of the mother"). And second, relevant here, Plaintiff Carter has no religious objection to abortion to save the life of the mother. Complaint, ECF No. 1 ¶¶ 6, 184. If VA's IFR was about saving a mother's life, this lawsuit would never have been filed.

So instead, Secretary McDonough also claims this is an emergency to protect the "health" of the mother. *See* 87 Fed. Reg. at 55295 (explaining the IFR must go into effect immediately because "an abortion may be the only treatment available to save *the health* or life of the pregnant

individual") (emphasis added).  The IFR claims good cause to forego notice-and-comment because of the need to combat "high rates of chronic medical and mental health conditions" for which access to abortions is the answer.  *See id.*

But Secretary McDonough provides no statistics, data, or rationale specific to health concerns that justify invocation of the narrow exception in APA § 553(b)(B) regarding giving notice and receiving comment.  Moreover, this failure to show good cause means Secretary McDonough did not satisfy the APA's exception in Section 553(d)(3) to the general requirement that there must be a delay of at least 30 days before a rule takes effect.  *See United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011).  Wholly aside from Plaintiff's arguments under RFRA and the First Amendment, these APA deficiencies provide alternative grounds for holding the IFR unlawful.  *See* 5 U.S.C. § 706(2).   This Court should do so.

## CONCLUSION

This case presents an important religious liberty issue, and Plaintiff is right to invoke RFRA and the Constitution.  But it is also important for the Court to be fully advised of the APA violations that the VA has committed in this process, reinforcing the unlawfulness of the IFR generally.

January 17, 2023                                                         Respectfully submitted,

*/s/ Kenneth A. Klukowski*
Gene C. Schaerr*
D.C. Bar No. 416368
Kenneth A. Klukowski
D.C. Bar No. 1046093
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Tel: (202) 787-1060
Facsimile: (202) 776-0136

kklukowski@schaerr-jaffe.com

Pamela Jo Bondi**
Florida Bar No. 0886440
Jessica Hart Steinmann
Texas Bar No. 24067647
AMERICA FIRST POLICY INSTITUTE
1635 Rogers Road
Fort Worth, Texas 76107
Tel: (571) 348-1802
jsteinmann@americafirstpolicy.com

*Counsel for Amicus Curiae*

\**pro hac vice* application pending
\*\**pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2023, the foregoing document was filed through the Court's ECF system and a copy will be served on all parties according to the Federal Rules of Civil Procedure.

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski

*Counsel for Amicus Curiae*

January 17, 2023